**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

KATHY ROBERTS;  PLAINTIFFS
and KAREN MCSHANE

v.                              No. 1:15CV00071 JLH

UNIMIN CORPORATION  DEFENDANT

**AMENDED OPINION AND ORDER**

Kathy Roberts and Karen McShane bring this action against Unimin Corporation seeking a declaratory judgment that a mineral lease entered into by the parties' predecessors in interest in 1961 is terminable at will or, in the alternative, is unconscionable.  The plaintiffs also allege that Unimin has been unjustly enriched and they seek restitution in excess of $75,000.  This Court has diversity jurisdiction under 28 U.S.C. § 1332.  Unimin has filed a motion to dismiss for failure to state a claim.  For the following reasons, the motion to dismiss is denied.

**I. BASIC FACTS**

In 1918, J.W. Williamson and Lizzie Williamson entered into a lease that granted Odell-Daly Material Company the right to mine certain property for siliceous materials for a term of twenty years.[1]  The lease contained a royalty provision that provided:

> For the first Five (5) years of said term the royalty shall be five (5) cents per ton on all materials shipped in crude form and three (3) cents per ton on all materials shipped in milled or pulverized form; that during the remainder of said term it is agreed that the royalty shall be five (5) cents per ton on all materials alike.

Document #1 at 31-32.

In 1934, J.W. Williamson entered into another lease for the property with similar royalty language: "Five cents (5¢) per ton on all material shipped, whether in crude form or shipped in

---

[1] The facts are taken from the complaint.  Document #1.

milled or pulverized form." Document #1 at 40. When J.W. Williamson died in 1943, he left the property to his two sons, Ray Williamson and Collie Williamson. Then in 1961, after Collie Williamson's death, a new lease was entered into between Ray Williamson and the devisees of Collie Williamson, as lessors, and the Silica Products Company, Inc. Unimin is the successor in interest to Silica.

The 1961 lease provides for the following royalty structure:

1. In consideration of the premises, the Lessee covenants and agrees to pay to Lessor the following royalties of all materials mined from or hauled over, across or under the above described lands . . . and shipped by Lessee whether in crude form or shipped in milled or pulverized form, which amount shall be net to Lessors;
    (a) Five (5) cents per ton for all siliceous materials mined or quarried from the [subject property];
    (b) Two (2) cents per ton for all siliceous materials mined or quarried from lands other than the above [subject property] and hauled over, across or under the above [subject property] . . .
    (c) Provided, however, that lessee agrees to pay to Lessor a minimum royalty of five (5) cents per ton of twenty five (25%) per cent of all siliceous materials mined or quarried from or hauled over, across or under the property of Lessors: and the royalty paid on the siliceous materials mined or quarried from Lessors property shall be chargeable against this 25% minimum royalty.

Document #1 at 6 and 20.

The provision establishing the term of the 1961 lease states:

TO HAVE AND TO HOLD . . . unto the lessee and to its successors and assigns for and during the term beginning the 1st day of March 1961 and ending the 31st day of January, 2007, and as long thereafter as mining and/or mining operations are prosecuted on [the subject property] and/or siliceous materials are hauled, transported over, across or under [the subject property] . . .

Document #1 at 7 and 19.

Kathy Roberts and Karen McShane now own the subject property and are assignees of the 1961 lease. Document #1 at 2 ¶ 9. Their complaint alleges three counts. Count I seeks a declaratory judgment that after January 31, 2007, the 1961 lease became terminable-at-will upon

reasonable notice because the term of the lease became indefinite. Document #1 at 8-9. Count II seeks a declaratory judgment that royalty and term provisions of the 1961 lease are unconscionable because the royalty is grossly inadequate and the term indefinite.[2] Document #1 at 10-11. Count III alleges that Unimin has been unjustly enriched by virtue of the royalty and term provisions of the 1961 lease. Document #1 at 11-13. Unimin has moved to dismiss the complaint, arguing that the plaintiffs lack standing because there is no actual controversy, that the plaintiffs' claims are barred by res judicata, that the statute of limitations bars the claims, and that the complaint fails to plead plausible claims.

## II. THE STANDARD FOR RULING ON A MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and must draw all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or

---

[2] If the lease is terminable at will, it is not unconscionable because the lessors could remedy the inadequate royalty at any time by terminating the lease, so the Court construes this allegation as pleading in the alternative.

a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

### III.  WHETHER THE COMPLAINT PLEADS PLAUSIBLE CLAIMS

Unimin argues that the plaintiffs' claims are not plausible because the lease has a definite term and is, therefore, not terminable at will. Again, the lease term was from March 1, 1961, until January 31, 2007, and "as long thereafter as mining and/or mining operations are prosecuted." Document #1 at 7 and 19. Unimin argues that this language creates a term for a definite period of time, whereas the plaintiffs argue that this provision creates an indefinite term and is terminable at will.

A lease for an indefinite term is unenforceable. *Coley v. Westbrook*, 206 Ark. 1111, 178 S.W.2d 991, 992-93 (Ark. 1944). "A lease for an indefinite term, with monthly rent reserved creates a tenancy from month to month." *Id.* at 993 (quoting 35 C.J. 1106). *Cf. Magic Touch Corp. v. Hicks*, 99 Ark. App. 334, 335, 260 S.W.3d 322, 324 (2007) (a contract for an indefinite term is terminable at will).

The Eighth Circuit, applying Missouri law, found that "a lease which is to end upon the happening of an event certain to occur but uncertain as to the time when it will occur, does not create a valid tenancy for years." *National Bellas Hess, Inc. v. Kalis*, 191 F.2d 739, 741 (8th Cir. 1951). Likewise, the Alabama Supreme Court held that a provision stating the lease may be renewed "so long as there is recoverable coal remaining in the lands leased hereby" was so incapable of ascertainment that it rendered the lease void as a tenancy for years and a tenancy-at-will was created. *Linton Coal Co., Inc. v. South Central Resources, Inc.*, 590 So.2d 911, 912 (Ala. 1991).

The lease term here – "as long thereafter as mining and/or mining operations are prosecuted" – is similar to the lease terms in these two cases. In *Linton Coal*, the lease was to end when there was no longer recoverable coal. In *National Bellas*, the lease was to end when a treaty of peace was signed at the end of World War II. Here, the lease would end when mining or mining operations cease. No one knows when that will occur.

In the cases that Unimin cites to support its position, the issue was not whether the lease term was indefinite. Unimin argues that *Mooney v. Gantt* should apply and that it is fatal to the plaintiff's claim. 219 Ark. 485, 243 S.W.2d 9 (1951). However, the plaintiffs in *Mooney* argued the lease lacked mutuality of obligation and consideration, not that the lease was for an indefinite term. 219 Ark. at 487, 243 S.W.2d at 10. In *Smith v. Long* the issue was whether the lessee was in default for not engaging in production when it would have been unprofitable. 40 Colo. App. 531, 533, 578 P.2d 232, 234 (Colo. App. 1978). And in *Bodcaw Oil Co. v. Atlantic Refining Co.*, the issue was whether the term – "for so long as oil and gas, or either of them, is being produced from the other lands" – were sufficient consideration to support an agreement. 217 Ark. 50, 59, 228 S.W.2d 626, 632 (Ark. 1950).

The plaintiffs' claim for a declaration that the lease is terminable at will is a plausible claim.

The Honorable Kristine G. Baker recently explained Arkansas law with respect to a claim that a contract is unconscionable:

> Under Arkansas law, "[i]n assessing whether a particular contract or provision is unconscionable, the courts should review the totality of the circumstances surrounding the negotiation and execution of the contract." *State ex rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299, 302 (1999) (quoting *Ark. Nat'l Life Ins. Co. v. Durbin*, 3 Ark. App. 170, 623 S.W.2d 548, 551 (1981)). "Two important considerations are whether there is a gross inequality of bargaining power between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question." *Id.* (quoting *Durbin*, 623 S.W.2d at 551). "The doctrine of unconscionability has both procedural and substantive elements.

> Procedural unconscionability deals with the manner in which a contract was entered into; substantive unconscionability, on the other hand, looks to the terms of the contract and whether they are harsh, one-sided, or oppressive." *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1082 (E.D. Ark. 2013) (internal quotation marks omitted). A party must prove both procedural and substantive unconscionability for an agreement to be unenforceable. *Id.*

*Hanjy v. Arvest Bank*, 94 F. Supp. 3d 1012, 1032 (E.D. Ark. 2015).

Here, the complaint alleges facts to support both the procedural and the substantive elements of a claim of unconscionability. As to procedural unconscionability, the contract alleges that the lease was negotiated shortly after the death of Collie Williamson, while the family was still recovering from the turmoil of his death, and it was negotiated with his children who had no experience in handling similar affairs and therefore relied upon the integrity of Silica Products Company, Inc., to determine a fair royalty price. The complaint further alleges that Silica took advantage of the situation to include a royalty price that was far below the market value as of 1961, which Silica was able to do because of the inexperience and circumstances of the persons with whom Silica was negotiating. These allegations meet the *Twombly* pleading standard.

Next, Unimin argues that the unjust enrichment claim fails because an unjust enrichment claim is not a viable theory where the parties have a contract. Unjust enrichment is an equitable doctrine based on the notion that a person should not become unjustly enriched at the expense of another and should be required to make restitution for the unjust enrichment received. *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, at 21, 381 S.W.3d 21, 36; *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 469, 237 S.W.3d 20, 24 (2006). "[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *Campbell*, 2011 Ark. 157, at 21, 381 S.W.3d at 36. Pleading unjust enrichment as an alternative to a breach-of-

contract claim is allowed in appropriate circumstances under Arkansas law. *See, e.g.*, *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1996); *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603, 605-06 (1994); 1 Howard W. Brill, *Arkansas Law of Damages* § 31:2 (5th ed. 2004).

While the general rule is that "[t]here can be no 'unjust enrichment' in contract cases," *Lowell Perkins Agency, Inc. v. Jacobs*, 250 Ark. 952, 958, 469 S.W.2d 89, 92 (1971), numerous exceptions to this rule exist. If, for instance, the contract was rescinded, the contract was discharged by frustration of purpose or impossibility, or the parties made a fundamental mistake about something in the contract, a party may seek recovery on a theory of unjust enrichment. *See Friends of Children, Inc.*, 46 Ark. App. at 61, 876 S.W.2d at 605 (holding that an unjust enrichment claim was not barred where the parties had effectively rescinded their contract). In determining what the general rule means and whether it applies, the rule's purpose is instructive:

> "The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for. . . . When the reason for the rule ceases, the rule itself ceases to apply. . . . Indeed, it would be a gross injustice to . . . apply woodenly the technical rule [that a party to an express contract is not allowed to proceed on an unjust-enrichment theory]."

*Campbell*, 2011 Ark. 157, at 23, 381 S.W.3d at 37 (quoting *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999)). When a contract is void or does not provide an answer to or fully address the issue at hand, a party may assert unjust enrichment. *Id.* (citing Brill, *Arkansas Law of Damages* § 31.2).

According to the *Restatement (Third) of Restitution and Unjust Enrichment*, the majority view in the United States is that a plaintiff can recover the value of contractual performance through

an unjust enrichment claim even if the plaintiff is not entitled to enforce the contract by an action for damages or specific performance:

> The plaintiff may lack a contract claim because the agreement of the parties was invalid, illegal, or unenforceable from the outset (§§ 31-33); because although initially valid it has been avoided, subsequent to the plaintiff's performance (§ 34); because the defendant demanded, and the plaintiff supplied, a performance for which the defendant has neither paid nor promised compensation (§ 35); or because the plaintiff himself is the party in breach (§ 36). Claims of this kind are logically part of the law of restitution, not contract, because they supply a remedy based on the defendant's unjust enrichment in cases where contract law explicitly denies a claim.

Restatement (Third) of Restitution and Unjust Enrichment pt. II, ch. 4, introductory note (2011); *see also* Robert Stevens, *When and Why Does Unjustified Enrichment Justify the Recognition of Proprietary Rights?*, 92 B.U. L. Rev. 919, 919 (2012) ("A Restatement's central purpose is not to explain why the law is as it is, but rather to restate the law in as clear and coherent a manner as possible."). *But see* Ernest J. Weinrib, *The Structure of Unjustness*, 92 B.U. L. Rev. 1067, 1079 (2012) ("Despite the outstanding accomplishment of Andrew Kull and his colleagues in the American Law Institute in drawing up the *Restatement (Third) of Restitution and Unjust Enrichment*, unjust enrichment is still the least developed area of private law.").

Here, if the plaintiffs prevail on their claim that the 1961 lease is unconscionable, the written contract will be set aside, and in that instance, the general rule that there can be no unjust enrichment in contract cases would not apply.

### IV. WHETHER AN ACTUAL CONTROVERSY EXISTS

Unimin argues that the plaintiffs do not have standing because there is no active controversy between the parties. Document #13 at 9. The Declaratory Judgment Act requires "a case of actual controversy." 28 U.S.C. § 2201(a). The court "may declare the rights and other legal relations of any interested party seeking such declaration." *Id.* Unimin argues that no controversy currently

exists because it is not in default on any provision in the lease and, even if it were, the plaintiffs have failed to give notice of a default and an opportunity to cure it, as required by the lease. That argument misses the mark because the plaintiffs are not arguing that the contract was breached. They are seeking a declaration that the lease became terminable-at-will after the initial term of the lease expired in 2007. Unimin denies that the lease is terminable-at-will, which creates an actual controversy.

## V. WHETHER THE PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA

Unimin also argues that the plaintiffs' claims are barred by res judicata. On September 23, 2011, the plaintiffs' predecessors, William Self and Richard Williamson, commenced an action against Unimin in the Circuit Court of Izard County, Arkansas, alleging that Unimin had breached the 1961 lease by failing to make reports required by the lease, had committed fraud,[3] and had committed waste by violating environmental regulations. Unimin removed the action to this Court, where it was docketed as *William Self and Richard Williamson v. Unimin Corp.*, E.D. Ark. No. 1:11CV00087 BSM.[4] While the action was pending, Self settled his claims by agreeing to transfer his interest in the property. And, on October 25, 2012, Richard Williamson, John William Williamson, and Kathy Roberts filed a motion to dismiss without prejudice, stating that Richard Williamson assigned his interest in the 1961 lease to his children, John William Williamson and Kathy Roberts. Document #12-1 at 1-2. John William Williamson filed a motion to be substituted

---

[3] Despite the mention of fraud in the complaint, no facts were alleged in support of a fraud claim.

[4] The Court can take judicial notice of its own records in the prior case. *Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005); *Hood v. United States*, 152 F.2d 431, 433 (8th Cir. 1946).

for Richard Williamson as plaintiff, and that motion was granted. Document #12-2. That order noted that Roberts had failed to move for substitution and therefore was not a party but that she would be substituted on proper motion. *Id*. Unimin opposed the motion to dismiss because it had filed a motion for summary judgment and had prepared for trial, which was imminent, at great expense. On November 1, 2012, the Honorable Brian S. Miller granted the motion to dismiss without prejudice, with the caveat that if either of the two Williamsons or Roberts re-filed the action, he or she must respond to the pending motion for summary judgment within five days of re-filing. Document #12-3. That order noted that Roberts joined the motion but because she was not a party her request was disregarded. *Id*.

On October 31, 2013, John William Williamson commenced an action against Unimin in the Circuit Court of Izard County, Arkansas, reasserting the claims that had been dismissed without prejudice and adding new claims. The new complaint included a separate count alleging that the royalty and term provisions of the 1961 lease were so unjust as to constitute fraud. Similarly, the new complaint included a count for rescission, alleging that the royalty and term provisions of the 1961 lease were so ambiguous as to require termination of the lease. In addition, the new complaint included a count for reformation on the ground that the instrument did not reflect the terms intended by the parties. Unimin again removed the action to this Court, where it was docketed as *John William Williamson v. Unimin Corp.*, E.D. Ark. No. 1:13CV00103 BSM. On December 12, 2013, Judge Miller dismissed the complaint with prejudice. Document #12-4. In the order of dismissal, Judge Miller stated that although Williamson had responded to the motion for summary judgment filed in the 2011 action, his response did not comply with the Federal Rules of Civil Procedure or the local rules and did not set forth specific facts showing that there was an issue for trial. Without

mentioning the new claims, Judge Miller granted Unimin's motion for summary judgment and dismissed the 2013 action with prejudice. *Id.*

Sometime in 2013, McShane brought an action in the Circuit Court of Izard County, Arkansas, against John William Williamson and Kathy Roberts. The only document in this Court's file regarding that action is the final order. Document #12-6. According to that order, Sand Dollar Mining, LLC, was established on July 13, 2012, and dissolved on September 13, 2012. At the time of the dissolution, three persons – McShane, Roberts, and John William Williamson – owned equal shares. On September 24, 2012, Sand Dollar Mining assigned its lease ownership to Roberts and John William Williamson. The circuit court declared that assignment to be void because not all of the owners participated in the assignment, and the court ordered the execution of a new assignment from Sand Dollar Mining to McShane, Roberts, and John William Williamson, with each to receive one-third of the assets in the assignment of the lease. According to Unimin's brief, the lease that was the subject of the Izard Circuit Court order is the lease at issue here, and Richard Williamson's assignment to his children flowed through Sand Dollar Mining. Document #13 at 13 n.1.

Because this is a diversity action, Arkansas law governs the res judicata analysis. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012). The Arkansas courts use the term res judicata to refer both to issue preclusion and claim preclusion. *Ruth R. Remmel Revocable Trust v. Regions Financial Corp.*, 369 Ark. 392, 402, 255 S.W.3d 453, 461 (2007); *Huffman v. Alderson*, 335 Ark. 411, 414, 983 S.W.2d 899, 901 (1998). Unimin's motion does not specify whether it is asserting that the plaintiffs' claims are barred by issue preclusion, claim preclusion, or both.

In Arkansas, issue preclusion requires four elements: (1) the issue to be precluded must be the same issue as in the prior litigation; (2) the issue must have been actually litigated; (3) the issue

11

must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment. *Stephens v. Jessup*, 793 F.3d 941, 944 (8th Cir. 2015) (citing *Beaver v. John Q. Hammons Hotels, L.P.*, 355 Ark. 359, 363, 138 S.W.3d 664, 666 (2003)).  A person who was not a party to the first action may assert issue preclusion, but the party against whom it is asserted must have had a full and fair opportunity to litigate the issue in the first action. *Stephens*, 793 F.3d at 944 (citing *Craven v. Fulton Sanitation Serv., Inc.*, 361 Ark. 390, 394, 206 S.W.3d 842, 844 (2005)).

Issue preclusion does not bar the plaintiffs' claims here.  Whether the 1961 lease became terminable at will after January 31, 2007, because the term was indefinite from that point forward was not actually litigated in the 2013 case, nor were the issues of whether the royalty and term provisions were unconscionable and whether Unimin had been unjustly enriched by virtue of them.

Claim preclusion in Arkansas bars a claim in a second suit when five elements are present:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies.

*Stephens*, 793 F.3d at 944 (quoting *Ark. Office of Child Support Enf't v. Williams*, 338 Ark. 347, 351, 995 S.W.2d 338, 339 (1999)).  Claim preclusion is broader than issue preclusion in that it bars not only claims that were actually litigated in the first suit, but also claims that could have been litigated. *Huffman*, 335 Ark. at 415, 983 S.W.2d at 901.  "Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *Id.*

Here, the 2013 action resulted in a final judgment on the merits; the Court had jurisdiction of the parties and the subject matter; and the 2013 action was fully contested in good faith.  Whether

claim preclusion bars this action depends on whether this action and the 2013 action involved the same claim or cause of action and whether both actions involved the same parties or their privies.

As to the question of whether both suits involve the same claim or cause of action, the complaint in the 2013 action did not allege that the 1961 lease was terminable at will because the term became indefinite after January 31, 2007, nor did that complaint allege that the royalty and term provisions of the 1961 lease were unconscionable or that Unimin had been unjustly enriched by virtue of them. But the complaint in the 2013 action did allege that the royalty and term provisions of the 1961 lease were so unfair as to constitute fraud, and that complaint sought to terminate the lease because of those provisions. While the complaint in this action identifies different legal theories, it asserts essentially the same claims. In this action, the complaint seeks to terminate the 1961 lease based upon the indefiniteness of its term; the complaint alleges that the royalty and term provisions are so unfair as to be unconscionable; and the complaint alleges that Unimin has been unjustly enriched because of the unfairness of the royalty and term provisions in the 1961 lease. Thus, the claims in this action are based on the same provisions of the 1961 lease as the claims asserted in the 2013 action, and this action seeks the same relief as the 2013 action, which is to terminate the 1961 lease. The 2013 action and this action therefore involve the same claims, though under the guise of different legal theories. "A party may not litigate a claim and then, upon an unsuccessful disposition, revive the same cause of action with a new theory." *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446, 450 (8th Cir. 1979).

In Arkansas, privity exists

> when two parties are so identified with one another that they represent the same legal right. *Jayel Corp. v. Cochran*, 366 Ark. 175, 234 S.W.3d 278 (2006) (holding that an attorney-client relationship was sufficient to satisfy the privity requirement). We have never required strict privity in the application of res judicata, but instead have supported the idea that there must be a "substantial identity of parties" to apply the

13

>doctrine. *Wells v. Heath*, 269 Ark. 473, 602 S.W.2d 665 (1980); *Rose v. Jacobs*, 231 Ark. 286, 329 S.W.2d 170 (1959). However, we have found privity for purposes of res judicata between a brother and sister, [*Francis v. Francis*, 343 Ark. 104, 31 S.W.3d 841 (2000)] (holding that a son's settlement with father involving a guardianship proceeding was res judicata as to father's subsequent suit with daughter); between a testator and his remote heirs, *Hardie v. Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993) (holding that a settlement by a testator is binding on the remote heirs); between a landlord and tenant, *Phelps v. Justiss Oil Co.*, 291 Ark. 538, 726 S.W.2d 662 (1987) (holding that a successor in interest is in privity with its grantor such that a prior ruling against the grantor is binding against the successor); between an insurer and its insured, *S. Farm Bureau Cas. Ins. Co. v. Jackson*, 262 Ark. 152, 555 S.W.2d 4 (1977) (holding that privity exists where insurer provided defense of insured except where the interests of the insured and insurer conflicted); between a bankrupt debtor and his trustee, *Curry v. Hanna*, 228 Ark. 280, 307 S.W.2d 77 (1957); and between a husband and wife in a land-dispute lawsuit, *Collum v. Hervey*, 176 Ark. 714, 3 S.W.2d 993 (1928) (holding that a title quieted against a husband was conclusive against the wife who had not been a party in the original lawsuit).

*Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, 10-11, 381 S.W.3d 793, 799-800 (2011).

Although Arkansas law casts a wide net when it comes to defining privies, no Arkansas case has specifically decided the issue of whether joint ownership of property, without more, creates privity. The general rule is that it does not. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 54 (1982). A leading treatise explains:

>The basic rule has been that concurrent property relationships do not justify nonparty preclusion. At least two basic reasons may be found for this rule. First, the underlying relationships often do not permit one party to represent another in transactions with outsiders. Representation in litigation hardly seems justified when it is denied for other purposes. Second, conflicts of interest often occur among the persons involved in a concurrent relationship that prevent assurance of fair representation.

18A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4461 (2nd ed. 2002). These two reasons apply here, at least as to McShane. John William Williamson, who obtained the dismissal of the 2011 action and unsuccessfully sued Unimin in the 2013 action, had no authority to represent McShane in

14

transactions with outsiders, such as Unimin.  Moreover, there was a conflict of interest between them at the time.  As noted above, on October 25, 2012, Richard Williamson, John William Williamson, and Kathy Roberts represented to the Court that Richard had assigned his interest in the 1961 lease to his children, John William Williamson and Kathy Roberts.  That representation omitted the fact that the assignment went through Sand Dollar Mining; and that McShane was an equal owner in Sand Dollar Mining; and that she had not been a party to the assignment pursuant to which John William Williamson and Roberts claimed their interests in the 1961 lease.  Furthermore, while John William Williamson was pursuing claims against Unimin, he was represented by the same lawyer who represented him (and Kathy Roberts) in the litigation against McShane in the Circuit Court of Izard County.

Arkansas has not expressly adopted Restatement (Second) of Judgments § 54, which articulates the general rule that concurrent ownership of property, without more, does not create privity, but in cases too numerous to cite the Arkansas courts have followed the Restatement of Judgments, and this Court is satisfied that Arkansas would do so here.  Here, specific facts indicate that while John William Williamson was pursuing the 2013 action he had no authority to represent McShane and was, in fact, in a conflict with her at the time.  McShane and Williamson were not in privity, so the judgment in the 2013 action does not bar McShane's claim.[5]

## VI.  WHETHER THE PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The next issue is whether the statute of limitations has run on the claims.  Because declaratory judgment is a procedural device, not a substantive claim, no general statute of limitations

---

[5] The same reasoning does not necessarily apply to Roberts, but if a need arises to distinguish between Roberts and McShane, facts will need to be developed to determine whether the exceptions to the general rule as articulated in Restatement (Second) of Judgments § 54 apply to Roberts.

exists for declaratory judgment actions, so courts look to the substantive claim underlying the declaratory cause of action and apply the statute of limitations that governs the substantive claim. *Gilbert v. City of Cambridge*, 932 F.2d 51, 57-58 (1st Cir. 1991); *In re Downingtown Indus. & Agric. Sch.*, 172 B.R. 813, 823 (Bankr. E.D. Penn. 1994). Accordingly, the threshold issue is which of the Arkansas statutes of limitations applies here. Unimin cites Arkansas's three-year statute of limitations that applies to most causes of action, Ark. Code Ann. § 16-56-105(3), the five-year statute of limitations for written contracts, Ark. Code Ann. § 16-56-111(a), the three-year statute of limitations for trespass actions, Ark. Code Ann. § 16-56-105(4), and the seven-year statute of limitations for adverse possession actions, Ark. Code Ann. § 18-61-101(a)(1). Document #13 at 15-16. Despite citing this litany of statutes of limitations, Unimin does not specify particular statutes of limitations that it contends applies here.

Conversely, the plaintiffs do not cite any statute of limitations in their brief. Rather, they argue that there is no statute of limitations applicable to this action because there is no underlying cause of action (Document #20) and, in the alternative, that the action did not accrue until they decided in 2015 to invoke their right to terminate the lease at will. Document #20 at 11-12.

As explained above, the plaintiffs contend that the 1961 lease had a definite term through January 31, 2007, after which the terms became indefinite, which, as a matter of law, means that the lease became a month-to-month tenancy that is terminable at will upon reasonable notice. An action by a lessor seeking a declaration that a lease is terminated is, in effect, an action brought by a landlord against a tenant alleging that the tenant has remained on the premises beyond the expiration of the lease term, with the remedy being ejection of the tenant and regaining possession of the premises by the landlord. Arkansas has two potential statutes that could apply, Ark. Code Ann. § 18-61-101(a), which provides for a seven-year statute of limitations for recovery of any real

property and Ark. Code Ann. § 18-61-103, which provides for a five-year statute of limitations for an action of ejectment when the plaintiff does not claim title to the land. *Cf. Schwarz v. Colonial Mortg. Co.*, 326 Ark. 455, 460-61, 931 S.W.2d 763, 765-66 (1996).

Assuming that after January 31, 2007, the 1961 lease became a month-to-month tenancy which was terminable at will upon reasonable notice, the plaintiffs' cause of action accrued when they or their predecessors first sought to terminate the lease, eject Unimin and regain possession of the real property. So far as the record shows, that happened on September 23, 2011, when the plaintiffs' predecessors commenced the 2011 action in the Circuit Court of Izard County, Arkansas, seeking rescission of the 1961 lease. Although the complaint in that action did not assert that the 1961 lease had become a month-to-month tenancy, terminable at will, it did seek rescission of the lease, which is another way of saying that it sought to terminate the lease. "Generally, the running of a statute of limitations commences when the plaintiff has a complete and present cause of action." *Riddle v. Udouj*, 99 Ark. App. 10, 13, 256 S.W.3d 556, 558 (2007). Here, the lessors under the 1961 lease had a complete and present cause of action in 2011 when they demanded that the lease be terminated and Unimin refused to acquiesce. The fact that the plaintiffs' predecessors were ignorant of their right to terminate the lease at will upon reasonable notice does not prevent the cause of action from accruing. *Wilson v. GECAL*, 311 Ark. 84, 87, 841 S.W.2d 619, 620 (1992) ("No mere ignorance on the part of the plaintiff of his rights . . . will prevent the statute bar.")). This action was commenced within five years after September 23, 2011, so it is not barred by either of the potentially applicable statutes of limitations, Ark. Code Ann. § 18-61-101(a) or § 18-61-103.

Unimin contends that the plaintiffs' claim that the 1961 lease is unconscionable accrued in 1961 when the lease was executed and is therefore barred by any conceivable statute of limitations. In support, Unimin cites *Bonds v. Carter*, 348 Ark. 591, 75 S.W.3d 192 (2002), and *Yerkovich v.*

17

*MCA, Inc.*, 11 F. Supp. 2d 1167, 1173-74 and n.7 (C.D. Cal. 1997). In *Bonds v. Carter*, the plaintiff contended that a timber deed executed in 1980 granting the right to remove timber from the described land for a period of 100 years in return for $1,000 was unconscionable. In responding to the defendant's argument that action brought nearly 20 years later was barred by the statute of limitations, the plaintiff contended that public policy concerns should override the statute of limitations. When the plaintiff offered no convincing authority to support her argument, the court refused to consider the issue. *Bonds*, 348 Ark. at 600, 75 S.W.3d at 198. The court did not address the issue of when the claim that a contract is unconscionable accrues. In *Yerkovich*, the court held that under California law a claim that a contract is unconscionable accrues at the time the contract was executed.

It does not appear that the Arkansas courts have decided the issue of when a claim that a contract is unconscionable accrues. As noted above, the plaintiffs' claim that the 1961 lease is unconscionable is pled in the alternative to the claim that the lease is terminable at will. If the plaintiffs prevail on their claim that the lease is terminable at will, the Court will not need to reach the issue of whether the unconscionability claim is barred by the statute of limitations. In the absence of controlling precedent from the Arkansas courts, the Court will refrain from ruling on the issue of whether the unconscionability claim is barred by the statute of limitations unless and until it becomes necessary to rule on that issue.

As to the plaintiffs' unjust enrichment claim, the applicable statute of limitations is the three-year statute provided in Ark. Code Ann. § 16-56-105. *Roach Mfg. Corp. v. Northstar Indus., Inc.*, 630 F. Supp. 2d 1004, 1007 (E.D. Ark. 2009). The parties have not briefed the issue of whether all of the plaintiffs' unjust enrichment claims are barred because an unjust enrichment claim could have been asserted as early as September of 2011, or whether the application of the three-year statute of

limitations means that the plaintiffs cannot recover damages that occurred more than three years before the commencement of this action.[6] Because the parties have not briefed this issue, the Court will not decide it at this time.

## CONCLUSION

For the reasons stated, Unimin Corporation's motion to dismiss is DENIED. Document #12.

IT IS SO ORDERED this 11th day of December, 2015.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[6] Brill explains:

> When an obligation calls for payments in installments, the cause of action accrues and the statute of limitations begins to run as each installment becomes due and goes unpaid. In deciding whether a default in one installment payment or one provision of a promissory note requires the commencement within the statutory period of an action upon the entire note, the courts have distinguished between an automatic acceleration clause and an optional acceleration clause. Under the latter and more customary situation, the failure to act in a timely manner bars only an action for those installments that fall outside the statutory period.

Brill, *Arkansas Law of Damages* § 13:6. As noted, the parties have not briefed the issue of whether this analysis, which governs contract actions, would apply in the unjust enrichment context.