IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KATHY ROBERTS and                                                                PLAINTIFFS
KAREN MCSHANE

v.                                              No. 1:15CV00071 JLH

UNIMIN CORPORATION                                                               DEFENDANT

**OPINION AND ORDER**

This action concerns a mineral lease. Kathy Roberts and Karen McShane, currently the lessors, seek a declaratory judgment that the lease is terminable at will under Arkansas law. Unimin Corporation, the current lessee, filed a motion to dismiss for failure to state a claim on September 25, 2015. Document #12. The Court denied the motion and pointed out that the issue was one of first impression for the Arkansas Supreme Court. Document #25. Unimin then filed a motion for summary judgment on March 3, 2016, asking the Court to decide as a matter of law that the lease is not terminable at will. Document #53. The plaintiffs filed a motion for partial summary judgment on March 17, 2016, asking the Court to decide that the lease is for an indefinite term and, therefore, terminable at will. Document #56. The Court has reviewed extensive briefing from both parties and heard oral argument on October 5, 2016. For the following reasons, Unimin's motion for summary judgment is granted and the plaintiffs' motion is denied.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute

of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

The lease at issue is the third in a series of leases dating back almost a century. In 1918, J.W. Williamson and Lizzie Williamson entered into a lease that granted Odell-Daly Material Company the right to mine the property for siliceous materials for a term of twenty years. The lease contained a royalty provision that provided:

> For the first Five (5) years of said term the royalty shall be five (5) cents per ton on all materials shipped in crude form and three (3) cents per ton on all materials shipped in milled or pulverized form; that during the remainder of said term it is agreed that the royalty shall be five (5) cents per ton on all materials alike.

In 1934, J.W. Williamson entered into another lease for the property with similar royalty language: "Five cents (5¢) per ton on all material shipped, whether in crude form or shipped in milled or pulverized form." When J.W. Williamson died in 1943, he left the property to his two sons, Ray Williamson and Collie Williamson. Then in 1961, after Collie Williamson's death, a new lease was entered into between Ray Williamson and the devisees of Collie Williamson, as lessors, and the Silica Products Company, Inc. Unimin is the successor in interest to Silica. Kathy Roberts and Karen McShane now own the subject property and are assignees of the 1961 lease.

The 1961 lease provides for the following royalty structure:

> 1.      In consideration of the premises, the Lessee covenants and agrees to pay to Lessor the following royalties of all materials mined from or hauled over, across or under the above described lands . . . and shipped by Lessee whether in crude form or shipped in milled or pulverized form, which amount shall be net to Lessors;
>
>         (a) Five (5) cents per ton for all siliceous materials mined or quarried from the [subject property];

> (b) Two (2) cents per ton for all siliceous materials mined or quarried from lands other than the above [subject property] and hauled over, across or under the above [subject property] . . .
>
> (c) Provided, however, that lessee agrees to pay to Lessor a minimum royalty of five (5) cents per ton of twenty five (25%) per cent of all siliceous materials mined or quarried from or hauled over, across or under the property of Lessors: and the royalty paid on the siliceous materials mined or quarried from Lessors property shall be chargeable against this 25% minimum royalty.

The provision establishing the term of the 1961 lease states:

> TO HAVE AND TO HOLD . . . unto the lessee and to its successors and assigns for and during the term beginning the 1st day of March 1961 and ending the 31st day of January, 2007, and as long thereafter as mining and/or mining operations are prosecuted on [the subject property] and/or siliceous materials are hauled, transported over, across or under [the subject property] . . . .[1]

This provision of the lease is called "the habendum clause" because it defines the mineral estate's duration. BLACK'S LAW DICTIONARY 838 (4th ed. 1968); *Gulf Oil Corp. v. Southland Royalty Co.*, 496 S.W.2d 547, 552 (Tex. 1973). The language at the center of this dispute is the "thereafter" clause, which provides that the lease continues so long as Unimin is mining or engaged in certain mining operations on the property. The plaintiffs contend that after January 31, 2007, the lease term became indefinite and, therefore, terminable at will. Unimin disagrees.

### III.

Under Arkansas law, "a contract for an indefinite term is terminable at will" *Magic Touch Corp. v. Hicks*, 99 Ark. App. 334, 335, 260 S.W.3d 322, 324 (2007). The plaintiffs maintain that the lease became terminable at will after January 31, 2007, because it is impossible to determine

---

[1] The Court recited these facts in its opinion and order denying Unimin's motion to dismiss. Document #26 at 1-3. The parties now have submitted evidence in the form of deposition testimony and various documents, but the basic underlying facts have not changed. Unimin has, however, cited additional law in support of its position that the lease is not terminable at will. *See* Document #54 at 4 (citing the RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT).

when the lease will end.  Conversely, Unimin insists that the term is determinable–the lease ends whenever Unimin ceases to engage in mining operations or haul and transport siliceous materials across or under the property.  The issue is governed by Arkansas law.  The Arkansas Supreme Court has never decided whether such a provision creates an indefinite term that is terminable at will, so as a federal court with diversity jurisdiction, this Court must predict the rule the Arkansas Supreme Court would adopt.  *See Chew v. American Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014).

Courts are divided on the issue of whether "thereafter" clauses such as the one at issue here create an indefinite term.  The Alabama Supreme Court has held that a provision stating the lease may be renewed "so long as there is recoverable coal remaining in the lands leased hereby" was so incapable of ascertainment that it rendered the lease void as a tenancy for years and created a tenancy-at-will.  *Linton Coal Co., Inc. v. S. Cent. Res., Inc.*, 590 So. 2d 911, 912 (Ala. 1991).  *See also Drummond Co., Inc. v. Walter Indus., Inc.*, 962 So.2d 753, 775-76 (Ala. 2006) (applying the holding in *Linton*).  Similarly, the Eighth Circuit, applying Missouri law, has held that "a lease which is to end upon the happening of an event certain to occur but uncertain as to the time when it will occur, does not create a valid tenancy for years." *Nat'l Bellas Hess, Inc. v. Kalis*, 191 F.2d 739, 741 (8th Cir. 1951).  *But see Hecht v. Repetto*, 33 S.W.2d 1021, 1023 (Mo. Ct. App. 1931) ("A lease may provide that it shall continue until the exhaustion of the mineral or clay covered by the lease.  Under such provision in the lease, the term is limited to the time that plaintiffs, in good faith, continue the operations.").  These decisions have the virtue of being consistent with the common

4

understanding of what "indefinite" means. A lease with a "thereafter" clause such as the one at issue here will last for an unknown length of time, which logically means that its term is indefinite.[2]

The majority rule, however, is to the contrary. "'Mining leases form a distinct class of instruments, creating special and peculiar legal rights and relations. In their principal features they are not unlike other leases, but in their purpose and operation they approach more closely gas and oil leases and the courts generally apply the same rules of construction to them alike.'" WILLISTON ON CONTRACTS § 50:57 (4th ed. 2016) (quoting *Fremont Lumber Co. v. Starrell Petroleum Co.*, 364 P.2d 773, 774-75 (Or. 1961)). It is common in oil and gas or mineral leases for the habendum clause to create a leasehold for a term of years followed by a provision stating that the "lease should continue thereafter as long as oil or gas [is] produced from the demised land in paying quantities . . . This provision, commonly spoken of as the 'thereafter' or 'paying quantities' clause, [is] the dominant principle of the modern habendum clause." 2 NANCY SAINT-PAUL, SUMMERS OIL AND GAS § 14:28 (3d ed. 2016). "[A] typical habendum clause states that the lease lasts for a relatively short fixed term of years (primary term) and then 'as long thereafter as oil, gas, or other mineral is produced' (secondary term)." *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). "Typically, . . . the habendum clause in an oil and gas lease provides that a lease will remain in effect for as long as oil or gas is produced 'in paying quantities.'" *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 268 (Pa. 2012). "Under an habendum clause providing '[i]t is agreed that this lease shall remain in full force for a term of five years from this date, and as long thereafter as oil or gas, or either of them is produced from said land by the lessee, or the premises are being

---

[2] For example, Summers says that oil and gas leases, after an initial term of years, typically "continue *indefinitely* as long as oil or gas in paying quantities are produced." 2 NANCY SAINT-PAUL, SUMMERS OIL AND GAS § 14:1 (3d ed. 2016) (emphasis added).

developed or operated,' the primary term may be extended as long as either of the two conditions is met." WILLISTON ON CONTRACTS § 50:58 (4th ed. 2016) (citing *Statex Petroleum v. Petroleum, Inc.*, 308 F.2d 815, 818-19 (10th Cir. 1962)). Most courts construe "thereafter" provisions as creating a determinable tenancy. *See Tank v. Citation Oil & Gas Corp.*, 848 N.W.2d 691, 696 (N.D. 2014); *Levin v. Maw Oil & Gas, LLC*, 234 P.3d 805, 930-31 (Kan. 2010); *Maralex Res., Inc. v. Gilbreath*, 76 P.3d 626, 635 (N.M. 2003); *Lamczyk v. Allen*, 134 N.E.2d 753, 755 (Ill. 1956); *Peckham v. Dunning*, 125 N.Y.S.2d 895, 898 (N.Y. 1953); *Renner v. Huntington-Hawthorne Oil & Gas Co.*, 244 P.2d 895, 899 (Cal. 1952); *Garcia v. King*, 164 S.W.2d 509, 510 (Tex. 1942); *Todd v. Mfrs. Light & Heat Co.*, 110 S.E. 446, 447 (W. Va. 1922); *Rich v. Doneghey*, 177 P. 86, 100 (Okla. 1918).

The majority rule is reflected in the Restatement (Second) of Property, which provides: "A landlord tenant relationship may be terminable on the occurrence of an event." RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 1.7 (1977). More specifically: "If the event is fully within the control of the landlord or the tenant, but not both, so that at the will of one only the tenancy can be terminated, the tenancy is not a tenancy at will." *Id.* at Comment b.

> A lease terminable at the will of one of the parties only is not one "to endure only so long as both the landlord and the tenant desire." It does not fall within the traditional concept of a tenancy at will. Such a lease is an estate for years determinable if the power to terminate it at the will of one of the partners is grafted on what would otherwise be an estate for years, and is a periodic tenancy determinable if the power to terminate is at the will of one of the parties is grafted on what would otherwise be a periodic tenancy.

RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 1.6 Comment g (1977).

The lease at issue here created an estate for years terminable thereafter on the occurrence of an event fully within the control of Unimin, i.e., ceasing to prosecute mining operations on the land

6

or ceasing to haul siliceous materials across the land. According to the Restatement and the majority of courts, such a lease does not create an indefinite term and therefore does not create a tenancy at will.

Though Arkansas courts have not decided whether a "thereafter" clause such as the one in question creates a lease for an indefinite term that is terminable at will, they have addressed "thereafter" clauses on several occasions. *See Wilson v. Talbert*, 259 Ark. 535, 536-37, 535 S.W.2d 807, 808 (1976) (holding that an oil lease expired by its own terms because after the initial lease term of two years, the lessee ceased to engage in oil production and did not commence drilling operations within sixty days as required by the "thereafter" clause); *Reynolds v. McNeill*, 218 Ark. 453, 457, 236 S.W.2d 723, 725 (1951) (holding that the lessor had a sixty-day grace period to resume paying oil production, even though the lease provided it would continue only "as long thereafter as oil or gas were produced in paying quantities"); *Mooney v. Gantt*, 219 Ark. 485, 486, 243 S.W.2d 9, 10 (1951) (holding that lease with "thereafter" clause was not invalid for lack of consideration or of mutuality); *Bodcaw Oil Co. v. Atlantic Ref. Co.*, 217 Ark. 50, 55-56, 228 S.W.2d 626, 630 (1950) (holding that lease continuing so long as oil or gas was produced was not invalid for lack of consideration or of mutuality); *Drummond v. Alphin*, 176 Ark. 1052, 4 S.W.2d 942, 943 (1928) (construing a lease provision providing that its terms would remain in force "so long as oil and gas [was] produced from the leased premises"). *See also Inman v. Milwhite Co.*, 292 F. Supp. 789, 794 (E.D. Ark. 1967) (federal court applying Arkansas law); *McMillan v. Malvern Gravel Co.*, 136 F. Supp. 567, 574 (W.D. Ark. 1955) (federal court applying Arkansas law). These cases, while not directly on point, are consistent with the majority view that "thereafter" clauses in oil and gas or mineral leases do not create a tenancy at will. Furthermore, the Arkansas Supreme Court

generally follows the Restatement (Second) of Property. *See Smith v. Wright*, 300 Ark. 416, 779 S.W.2d 177 (1989); *Motes/Henes Trust, Bank of Bentonville v. Motes*, 297 Ark. 380, 761 S.W.2d 938 (1988); *Majewski v. Cantrell*, 293 Ark. 360, 737 S.W.2d 649 (1987); *Warmack v. Merch. Nat'l Bank of Fort Smith*, 272 Ark. 166, 612 S.W.2d 733 (1981); *Rice v. King*, 214 Ark. 813, 218 S. W.2d 91 (1949) *But see Kidwell v. Rhew*, 371 Ark. 490, 494, 268 S.W.3d 309, 312 (2007) (declining to adopt the RESTATEMENT (SECOND) OF PROPERTY, DONATIVE TRANSFERS § 34.2 (1992) where the issue was governed by a clear and unambiguous statute).

The plaintiffs argue that *Coley v. Westbrook* mandates the conclusion that the lease at issue here is for an indefinite term and, therefore, is terminable at will. 206 Ark. 1111, 178 S.W.2d 991 (1944). *Coley* was an unlawful detainer action involving a landlord who rented the apartment to a tenant. *Id.* at 1111, 178 S.W.2d at 992. The parties had no written lease agreement. The tenant argued she "was to have the property as long as she wanted it." *Id.* at 1111, 178 S.W.2d at 992-93. The court rejected that contention, saying "[w]here the tenant enters without any specified term, and pays rent monthly, he presumptively becomes a monthly tenant." *Id.* at 1111, 178 S.W.2d at 993. Here, the parties have a written lease with a specified term. *Coley* is not on point.

This Court predicts that the Arkansas Supreme Court would follow the majority of courts and the Restatement. The "thereafter" provision in a lease at issue such as the one here establishes a lease term that is terminable on the occurrence of an event, not a tenancy at will; and the fact that the event is wholly within the control of Unimin does not render the lease terminable at the will of the lessors.

### IV.

Under Count III for unjust enrichment, the plaintiffs seek royalties and current market value of silica sand from the time they attempted to terminate the lease. Document #1 at 11-13, ¶¶85-100. As counsel for the plaintiffs conceded at the oral argument, the unjust enrichment claim hinges upon this Court holding that the lease is terminable at will by the plaintiffs. Because the lease is not terminable at will by the plaintiffs, Unimin has not received anything of value to which it is not entitled. *See Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, 20-21, 381 S.W.3d 21, 36 (2011). Count III fails as a matter of law.

### CONCLUSION

For the foregoing reasons, Unimin's motion for summary judgment is GRANTED. Document #53. Kathy Roberts and Karen McShane's motion for partial summary judgment is DENIED. Document #56. Unimin's remaining pending motions for summary judgement based on the statute of limitations and res judicata are DENIED AS MOOT. This action is dismissed with prejudice.

IT IS SO ORDERED this 7th day of October, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE