**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

KATHY ROBERTS                                                                                              PLAINTIFFS
and KAREN MCSHANE

v.                                                     No. 1:15CV00071 JLH

UNIMIN CORPORATION                                                                                    DEFENDANT

**OPINION AND ORDER**

The question before the Court is whether to award attorney's fees and costs to the prevailing party, Unimin Corporation. Kathy Roberts and Karen McShane, currently the lessors under a 1961 mineral lease, sought a declaratory judgment that the lease was terminable at will under Arkansas law. The Court granted summary judgment in favor of the lessee, Unimin, holding that the lease was not terminable at will and dismissing the action with prejudice. Unimin has now filed a motion seeking attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and Ark. Code Ann. § 16-22-308, as well as costs under Rule 54(d)(1). Unimin asks this Court to award $103,347.93 in attorney's fees and $2,225.60 in costs. For the following reasons, Unimin's motion for attorney's fees is denied and the request for costs is granted.

The lease at issue was the third in a series of leases dating back almost a century. In 1918, J.W. Williamson and Lizzie Williamson entered into a lease that granted Odell-Daly Material Company the right to mine the property for siliceous materials for a term of twenty years. The lease contained a royalty provision that provided:

> For the first Five (5) years of said term the royalty shall be five (5) cents per ton on all materials shipped in crude form and three (3) cents per ton on all materials shipped in milled or pulverized form; that during the remainder of said term it is agreed that the royalty shall be five (5) cents per ton on all materials alike.

In 1934, J.W. Williamson entered into another lease for the property with similar royalty language: "Five cents (5¢) per ton on all material shipped, whether in crude form or shipped in milled or pulverized form." When J.W. Williamson died in 1943, he left the property to his two sons, Ray Williamson and Collie Williamson. Then in 1961, after Collie Williamson's death, a new lease was entered into between Ray Williamson and the devisees of Collie Williamson, as lessors, and the Silica Products Company, Inc. Unimin is the successor in interest to Silica. Kathy Roberts and Karen McShane, who are Ray Williamson's granddaughters, now own the subject property and are assignees of the 1961 lease.

The 1961 lease provides for the following royalty structure:

1. In consideration of the premises, the Lessee covenants and agrees to pay to Lessor the following royalties of all materials mined from or hauled over, across or under the above described lands . . . and shipped by Lessee whether in crude form or shipped in milled or pulverized form, which amount shall be net to Lessors;

(a) Five (5) cents per ton for all siliceous materials mined or quarried from the [subject property];

(b) Two (2) cents per ton for all siliceous materials mined or quarried from lands other than the above [subject property] and hauled over, across or under the above [subject property] . . .

(c) Provided, however, that lessee agrees to pay to Lessor a minimum royalty of five (5) cents per ton of twenty five (25%) per cent of all siliceous materials mined or quarried from or hauled over, across or under the property of Lessors: and the royalty paid on the siliceous materials mined or quarried from Lessors property shall be chargeable against this 25% minimum royalty.

The provision establishing the term of the 1961 lease states:

TO HAVE AND TO HOLD . . . unto the lessee and to its successors and assigns for and during the term beginning the 1st day of March 1961 and ending the 31st day of January, 2007, and as long thereafter as mining and/or mining operations are prosecuted on [the subject property] and/or siliceous materials are hauled, transported over, across or under [the subject property] . . . .

This provision of the lease is called "the habendum clause" because it defines the mineral estate's duration. Black's Law Dictionary 838 (4th ed. 1968); *Gulf Oil Corp. v. Southland Royalty Co.*, 496 S.W.2d 547, 552 (Tex. 1973). The language at the center of this dispute was the "thereafter" clause, which provides that the lease continues so long as Unimin is mining or engaged in certain mining operations on the property. The plaintiffs contended that after January 31, 2007, the lease term became indefinite and, therefore, terminable at will. The issue was one of first impression in Arkansas. Ultimately, the Court predicted that the Arkansas Supreme Court would hold that such a lease is not terminable-at-will.

**I.**

"In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies." *FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 649 (8th Cir. 2014); *see also All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 520 (8th Cir. 2009). Arkansas law generally precludes an award of attorney's fees, unless a statute or contractual agreement provides for such an award. *Stokes v. Stokes*, 2016 Ark. 182, 10, 491 S.W.3d 113, 120. Unimin asks this Court to award attorney's fees pursuant to Ark. Code Ann. § 16-22-308, which provides:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or *breach of contract*, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party *may* be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

(Emphasis added). Enacted in 1987, section 16-22-308 and the scope of its application have been the subject of numerous court opinions. The Arkansas Supreme Court noted in its first encounter

with the then recently-enacted statute that it would "no doubt have a considerable impact on [the law concerning attorney's fees]." *Damron v. Univ. Estates, Phase II, Inc.*, 295 Ark. 533, 537, 750 S.W. 402, 404 (1987). The issue here is whether this action is one to recover for breach of contract. If so, then the statute gives the Court discretion to award attorney's fees to Unimin, the prevailing party. *See Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, 12, 381 S.W.3d 793, 801.

Most recently, the Arkansas Supreme Court analyzed the scope of section 16-22-308 in *Stokes*, where a son filed a petition against his father to quiet title. 2016 Ark. at 2, 491 S.W.3d at 116. The son asked the trial court to set aside a quitclaim deed, to award damages for conversion, fraud, and negligence, and to permit recovery of rents and government payments based on unjust enrichment. *Id*. The son prevailed and the trial court awarded him attorney's fees pursuant to section 16-22-308. *Id*. at 3, 491 S.W.3d at 117. The father appealed the award, arguing that section 16-22-308 was inapplicable because the son did not allege a claim for breach of contract. *Id*. at 11, 491 S.W.3d at 121. The Arkansas Supreme Court agreed with the father for two reasons. *Id*. First, based on the pleadings, the dispute between the parties did not concern a breach of a contract; rather, the complaint alleged a quiet-title action. *Id*. Second, the son sought damages based on unjust enrichment, not breach of contract. *Id*. at 12, 491 S.W.3d at 121.

Section 16-22-308 is inapplicable to this action for similar reasons. First, the action was for declaratory judgment, and second, the plaintiffs sought restitution for unjust enrichment, not breach of contract. The plaintiffs sought a declaration that the lease was terminable-at-will or, if the lease was not terminable-at-will, that the lease was unconscionable. They also sought restitution based on unjust enrichment. The plaintiffs abandoned the unconscionability argument and the Court

ultimately held that the lease was not terminable-at-will. Thus, the pleadings show that the nature of the action was one for declaratory judgment.

The Arkansas Supreme Court has "held that attorney's fees [are] not recoverable in declaratory-judgment cases, even when the underlying dispute [arises] from a contract . . . ." *Lonoke Cnty. v. City of Lonoke*, 2013 Ark. 465, 7, 430 S.W.3d 669, 673 (citing *Hanners v. Giant Oil Co. of Ark., Inc.*, 373 Ark. 418, 425, 284 S.W.3d 468, 474 (2008)). *Cf. Sunbelt Exploration v. Stephens Prod. Co.*, 320 Ark. 298, 896 S.W.2d 867 (1995) (holding that section 16-22-308 applied in action where plaintiff sought the cancellation of oil and gas leases based on a breach by the lessee of the leases' implied and express terms).

Unimin argues that the nature of the plaintiffs' complaint was one for breach of contract, rather than declaratory judgment, and states:

> Plaintiffs based their claims on the 1961 Lease, and the meaning of its words. The claim was that the 1961 Lease, by its terms, was terminable at will. According to the Plaintiffs, Unimin had failed to abide by—had breached—the contract's terms by failing to honor Plaintiffs' notice of termination at will . . . . The gist of this case is a suit "to recover upon a . . . contract relating to the purchase or sale of goods . . . or services . . . or breach of contract."

Document #112 at 7, ¶13. The plaintiffs alleged that under Arkansas law, the lease became terminable-at-will in 2007 when the "thereafter" clause kicked in. The plaintiffs did not allege, as Unimin says, that Unimin breached the lease by refusing to honor the plaintiffs' desire to terminate it. A plaintiff is the master of his complaint. Try as it might, Unimin, as the defendant, cannot recast the action as one for breach of contract, rather than one for declaratory judgment. Seeking a declaration from the Court as to when or if a lease may be terminated is not an allegation of a breach of contract. *See Walls v. Humphries*, 2013 Ark. 286, 13, 428 S.W.3d 517, 526 ("Although appellants

5

sought cancellation of the lease, assignment, and deed, the litigation between the parties does not concern a breach of these agreements. Therefore, a fee is not allowed under the statute.").

Unimin also argues that the plaintiffs' claim for restitution based on unjust enrichment brings this action within the purview of section 16-22-308, but that argument also fails. The plaintiffs alleged that the lease became terminable-at-will on January 31, 2007, and sought to recover the value of the benefit Unimin had received from the property beginning on that date. The plaintiffs' claim for restitution was not based on the terms of the lease but on the market value of Unimin's use of the property and the minerals extracted therefrom after the lease became terminable.

Unimin maintains that "the fact that Plaintiff sought an equitable remedy for breach of contract, rather than damages for its expectancy under the contract, does not affect fee liability under § 16-22-308." Document #112 at 6, 11. The Arkansas Supreme Court rejected Unimin's argument in *Friends of Children, Inc. v. Marcus*:

> The appellees argue that since unjust enrichment is based on the concept of "quasi-contract," the cause of action will fit as a suit on a contract under [section 16-22-308]. But the implied-in-law contract or quasi-contract, is indeed no contract at all; it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense.

46 Ark. App. 57, 63, 876 S.W.2d 603, 606 (1994). Again, if the plaintiffs had prevailed, any award for unjust enrichment would have been based on the value of the benefit received from the property by Unimin after the plaintiffs terminated the lease, not on the contract between the parties. *See Barnhart v. City of Fayetteville*, 335 Ark. 57, 60, 977 S.W.2d 225, 226 (1998). Regarding section 16-22-308's application to civil actions involving unjust enrichment, the court explained in *Stokes*:

> Quantum meruit is a claim for unjust enrichment that does not involve the enforcement of a contract. There can be no unjust enrichment in contract cases. Unjust enrichment is a quasi-contract claim. Courts of foreign jurisdictions have

> allowed the recovery of attorney's fees by applying the legal fictions of implied contract and quasi-contract, but this has never been allowed in Arkansas. Because [the son] asserted an unjust-enrichment claim, he is not entitled to attorney's fees.

*Stokes*, 2011 Ark. 208 at 12, 491 S.W.3d at 121 (internal citations and quotation omitted).

Unimin relies on *Hanners v. Giant Oil Co. of Ark.,* Inc., 373 Ark. 418, 284 S.W.3d 468 (2008), and *Stilley v. James*, 347 Ark. 74, 60 S.W.3d 410 (2001) ("*Stilley II*"), for its argument that section 16-22-308 applies because the plaintiffs asked for restitution based on unjust enrichment. In *Hanners*, the lessee of real property brought an action against the lessor seeking a declaratory judgment that the lessee was contractually entitled to purchase the real property during the final term of the lease. 373 Ark. at 420-21, 284 S.W.3d at 471. The trial court awarded the lessee attorney's fees pursuant to section 16-22-308, and the lessor appealed. *Id.* at 425, 284 S.W.3d at 474. The lessor argued that the statute did not apply. *Id.* The Arkansas Supreme Court held that because the lessee prevailed in a declaratory-judgment action, and not a breach of contract action, the trial court did not have the discretion to award attorney's fees pursuant to section 16-22-308. *Id.* at 426, 284 S.W.3d at 475.

The court in *Hanners* distinguished the case from *Stilley II*, where it held that section 16-22-308 applied to a declaratory-judgment action involving an indemnity agreement. *Stilley II*, 347 Ark. at 78, 60 S.W.3d at 413. The *Hanners* court reasoned that, unlike in *Stilley*, "[n]o claim was made for breach of contract, no claim was made for the recovery of damages, and no damages were recovered." 373 Ark. at 426, 284 S.W.3d at 475 n.2. Unimin argues that though plaintiffs may not have alleged a claim for breach of contract and may not have recovered damages, they did make a claim for the recovery of damages. Therefore, according to Unimin, this case is comparable to

*Stilley*. Unimin, however, disregards the rest of the court's discussion of *Stilley* in *Hanners*. The court stated:

> The *Stilley* case is distinguishable from the instant case. Here, Giant Oil merely asked for an interpretation of the lease agreement and a declaration of the parties' rights.... In fact, under Giant Oil's interpretation of the lease agreement, which was adopted by the circuit court, there was no way Hanners could have been in breach of contract at the time the suit was filed, or at the time of the summary judgment, or at the time of the attorney's fees hearing . . . Further, at no time prior to the entry of summary judgment did Giant Oil assert that Hanners had breached its contract. In contrast, the prevailing parties in *Stilley* sued Stilley for breach of an indemnity contract and recovered a judgment in the amount of $200,000 based on Stilley's breach of that agreement. The cause of action in *Stilley* fell within the provisions of § 16-22-308; Giant Oil's declaratory judgment against Hanners does not.

373 Ark. at 426, 284 S.W.3d at 475, n.2. Because the plaintiffs have never alleged that Unimin violated the terms of the lease and have never sought damages based on such a violation, *Stilley II* does not dictate the outcome of this case. In *Stilley*, the third-party beneficiaries to an indemnity agreement asked the trial court to determine the rights and responsibilities of various parties under the agreement. *Stilley v. James*, 342 Ark. 362, 365, 48 S.W.3d 521, 523 (2001) (*Stilley I*). The plaintiffs similarly asked this Court to determine their rights under the lease. But, in *Stilley*, the third-party beneficiaries alleged that the defendant had failed to provide indemnification in the amount of $200,000 as required by the agreement. *Id*. at 366, 48 S.W.3d at 524. Here, the plaintiffs simply asked the Court to decide whether they could unilaterally terminate the lease and sought restitution based on the benefits Unimin derived from the lease from the date the lease became terminable.

Because the litigation between the plaintiffs and Unimin did not concern a breach of contract and because the plaintiffs' claimed restitution based on unjust enrichment, not damages based on

breach of contract, section 16-22-308 does not apply. Therefore, the Court is not authorized to award attorney's fees to Unimin.

## II.

Even if section 16-22-308 were to apply, the Court would not award Unimin attorney's fees. Section 16-22-308 authorizes but does not require the Court to award a reasonable attorney's fee to the prevailing party. *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 229, 800 S.W.2d 717, 718 (1990). "The decision to award attorney's fees and the amount to award are discretionary determinations[.]" *Marcum v. Wengert*, 344 Ark. 153, 160, 40 S.W.3d 230, 235 (2001); *see also Worley v. City of Jonesboro*, 2011 Ark. App. 594, 385 S.W.3d 908, 919.

There is no "fixed formula" for determining the amount of a reasonable fee award, but the Arkansas Supreme Court has directed courts to consider the eight "*Chrisco*" factors when evaluating the reasonableness of a fee request: (1) the experience and the ability of the attorney; (2) the time and labor required to perform the legal service properly; (3) the amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar legal services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or by the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. *Chrisco*, 304 Ark. at 229-30, 800 S.W.2d at 719.

The law does not require a discussion of every factor in every case. *See G & K Serv. Co., Inc. v. Bill's Super Foods, Inc.*, 766 F.3d 797, 801 (8th Cir. 2014). Rather, the factors provide guidance to trial courts to ensure an adequate explanation is provided so that appellate courts can evaluate the exercise of discretion. *See Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark.

303, 313, 902 S.W.2d 760, 766 (1995) (remanding for the trial court to consider whether to award fees for breach of contract, where trial court denied a request for an attorney's fee but gave no reason). Not all of the factors will be relevant in every case. *See, e.g.*, *Mo. & N. Ark. R.R. Co., Inc. v. Entergy Ark., Inc.*, No. 1:10CV0008-DPM, 2013 WL 5442099 at 3 (E.D. Ark. Sep. 27, 2013) ("Some of the *Chrisco* considerations either don't apply or are at the margin."). Furthermore, the *Chrisco* factors are primarily relevant to the determination of the amount of attorney's fees that would be reasonable, not to the threshold issue of whether to award any attorney's fees.

The Court recognizes that Unimin's attorneys are experienced and able, that they expended a significant amount of time and labor, that Unimin expended that time and labor only to preserve the status quo, and that the issues were novel and difficult. As noted above, the primary issue before the Court was one of first impression under Arkansas law. In this case, that fact weighs against an award of attorney's fees. Because the law was unclear, the plaintiffs sought guidance from this Court. It would be unfair to punish the plaintiffs for doing so when they were acting in good faith to enforce what they reasonably believed to be their right to terminate the lease. *See Jones v. Abraham*, 67 Ark. App. 304, 316, 999 S.W.2d 698, 706 (1999) (affirming the trial court's denial of requests for attorney's fees where the reason provided for the denial was the plaintiffs' good faith attempt to enforce an oral contract).

Furthermore, the Court cannot ignore the disparity between the financial abilities of the parties and the fact that Unimin is the beneficiary of a mineral lease in which the royalty provision apparently is based on grossly outdated market values[1] with no provision for adjustment. Disparity

---

[1] As noted above, the 1961 lease succeeded leases in 1918 and 1934 and included royalty terms substantially unchanged since 1918 (five cents per ton for siliceous materials mined or quarried from the property and two cents per ton for siliceous materials transported over the

in incomes has been established as a relevant factor in Arkansas domestic relations cases, and it is relevant in this case as well. *See Davis v. Williamson*, 359 Ark. 33, 46, 194 S.W.3d 197, 205 (2004). It is well-established that Arkansas provides "no fixed formula for determining reasonable attorney's fees" and nothing indicates that courts must only consider the *Chrisco* factors. *See Payne v. Donaldson*, 2011 Ark. App. 467, 5, 385 S.W.3d 296, 299 ("[T]he circuit court may use its own experience as a guide and can consider the types of factors set forth in *Chrisco*.").

Unimin is a large corporation, whereas the plaintiffs have each provided affidavits demonstrating that they are of modest means. Kathy Roberts works as a detention officer for the Izard County Sheriff's Department. She earns $29,000 per year. Karen McShane receives $2,182 each month as a retired teacher. Documents #113-1, #113-2, and #121-1. Unimin disputes the veracity of the plaintiffs' affidavits. It points to the 1961 mineral lease, arguing that "[t]hey are recipients of a steady, monthly income stream from the mineral lease at issue." Document #118 at 3. But Unimin does not say how much the plaintiffs receive each month under the lease and it is undisputed that, pursuant to the lease, the royalty rate has not been adjusted for increases in market value of the minerals or for inflation at least since 1961. Unimin also argues that Roberts is the mayor of Guion, Arkansas, and "presumably draws pay and benefits commensurate with that position." Document #118 at 3. Guion has a population of 86, according to the Arkansas Municipal League,[2] and it does not advance Unimin's position to presume that Roberts draws a salary commensurate with her position as mayor of a town with a population of 86. Roberts has responded with an affidavit saying that her income of $29,000 per year includes her salary as a detention officer

---

property).

[2] Arkansas Municipal League, http://local.arkansas.gov/local.php?agency=Guion.

and her salary as mayor of Guion. Finally, Unimin attaches land records demonstrating that Roberts owns around 97.1 acres in Izard County in addition to her primary residence, Document #118-1, but those records also demonstrate that the land has little market value. Unimin's evidence disputing the veracity of the plaintiffs' affidavits is unconvincing.

It is clear that the plaintiffs do not have the financial ability to pay Unimin's attorney's fees. An award of fees at or near the amount Unimin requests would be a harsh punishment for two individuals with limited resources who find themselves stuck with a mineral lease that perpetually limits their royalties to an outdated market value with no provision for adjustment. In the context of an issue regarding the taxation of costs, the Eastern District of New York explained:

> It would be unfortunate if the threat of the imposition of the ever-increasing costs of litigation were to prevent a party such as the present defendant from defending with full vigor a case which it reasonably thought should be decided in its favor, or even a case where the issue was close. . . .
>
> It may well be desirable that the potential cost of unsuccessful litigation should act as a deterrent to litigation and an incentive for the parties to settle. But where the antagonists are very unevenly matched in size, resources, and stability it would be unfortunate to use the possible taxation of costs as a sword of Damocles and so prevent a good faith defense. It is to inevitate such a result that the court's discretion is employed in such instances.

*Boas Box Co. v. Proper Folding Box Corp.*, 55 F.R.D. 79, 81 (E.D.N.Y. 1971). Likewise here. It would be unfortunate if the ever-increasing costs of litigation, including attorney's fees, were to prevent parties such as Kathy Roberts and Karen McShane from pursuing a case that they reasonably believe should be decided in their favor, or even a case where they think the issue is close. Awarding attorney's fees here would not only ruin Roberts and McShane financially, it would also send a message to landowners who lease rights to minerals and oil and gas that they should not pursue litigation against their lessees unless they are certain to prevail; otherwise they might be ruined

financially by a crippling award of attorney's fees. *Cf. Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982) (noting that the distinction between attorney's fees and costs is that "the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation").

Here, Roberts and McShane pursued a legal issue that was not only one of first impression, and in the Court's mind a close issue, but also was one in which justice and fairness appear to be on their side. In ruling on the legal issue that decided this case on the merits, the Court had no authority to impose a fair and just result; rather, the Court's job was to make an honest assessment of what the law provides and then apply that law to this case. Now, however, in determining whether to award attorney's fees, the law gives the Court discretion; in exercising that discretion the Court can, and should, consider fairness and justice. It seems unfair and unjust that Unimin should be allowed to occupy Roberts and McShane's property, mine and quarry siliceous materials from the property, and transport siliceous materials across their property, while paying royalty at a rate that appears not to have been updated since at least 1961; yet, if this Court correctly ascertained the applicable law, Unimin has the legal right to do just that, and Unimin has chosen, rightly or wrongly, to stand on that right.[3] Regardless, it would be unfair and unjust to impose on Roberts and McShane an obligation to pay what would be for them a crippling amount of attorney's fees. Nothing in the law compels that unfair and unjust result.

---

[3] In a January 11, 2007 email to in-house counsel and the regional manager, the plant manager stated, "I spoke with Dick Williamson's son, Bill . . . . He went on to tell me that the original lease had been in place with the same royalty rate since 1935 and he didn't feel that was fair. He also called into question why a term from 1961 to 2007 was put into the language if the lease could go on indefinitely. So in effect it comes down to Bill trying to get a new lease rate negotiated for him and his two sisters [McShane and Roberts] who will be his father's heirs. . . . I can sympathize with the Williamson's [sic], in that it is a lease in perpetuity with no chance of increase and let's face it a nickel isn't worth what it used to be worth. From a company point of view, I don't feel obligated to increase the rate and hence increase our operating expense." Document #80-6.

This Court is not required to award attorney's fees under section 16-22-308. Here, any award at or near the amount Unimin requests would be unreasonable. *See Reliance Ins. Co. v. Tobi Eng'g, Inc.*, 735 F. Supp. 326, 328 (W.D. Ark. 1990). None will be awarded.

### III.

Unimin also requests $2,225.60 in taxable costs pursuant to Federal Rule of Civil Procedure 54(d)(1). Document #112-3. Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Eighth Circuit has held that Rule 54(d) codifies a rebuttable presumption that the prevailing party is entitled to costs. *Leonard v. Sw. Bell Corp. Disability Income Plan*, 504 F.3d 528, 533 (8th Cir. 2005). However, the district court has substantial discretion in awarding costs and may consider the plaintiffs' limited resources. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006); *Cross v. Gen. Motors Grp.*, 721 F.2d 1152, 1157 (8th Cir. 1983).

A judge may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," and "[a] bill of costs shall be filed in the case and, upon allowance, included in the judgment or degree." 28 U.S.C. § 1920 (amended by Judicial Admin. and Technical Amendments Act of 2008, Pub. L. No. 110406, 122 Stat. 4291, 4299; *accord* 28 U.S.C. § 1920(2) (2015)). Not all expenses of litigation are costs taxable against the losing party, and within the statutory framework of costs eligible to be taxed, the district court has discretion in determining and awarding costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42, 107 S. Ct. 2494, 2497, 96 L. Ed. 2d 385 (1987). Unimin seeks to recoup its costs for the deposition transcripts of Richard Williamson, John William Williamson, Kathy Roberts, Karen McShane, Meghan Demasi,

Joseph Shapiro, and Mike Maloney and attaches itemized invoices from the court reporting service. Document #112-2.

The Court must determine whether the deposition transcripts were necessarily obtained for use in the case. "Depositions that are merely investigative, preparatory, or useful for discovery, rather than for the presentation of the case typically are not taxable costs." *Wheeler v. Carlton*, No. 3:06CV00068 (GTE), 2007 WL 1020481 at 3 (E.D. Ark. April 2, 2007); *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). Judge Eisele explained the way a court determines whether depositions were necessary as required by 28 U.S.C. § 1920:

> This Court's policy is not to allow deposition costs to be recovered unless the deposition was used at trial or the requesting party makes a specific showing that the deposition was reasonably necessary for the case rather than purely investigative. "When a deposition is not actually used at trial, whether its cost is taxable is determined by determining whether the deposition reasonably seemed necessary at the time it was taken." *See* 10 Wright, Miller, & Kane, *Federal Practice and Procedure*, § 2676 at 424.
>
> "The justification for taxing the expense of a deposition that is introduced in evidence also supports taxing the expense of a deposition employed on a successful motion for summary judgment." *See* 10 Wright, Miller, & Kane, *Federal Practice and Procedure*, § 2676 at 423. "When a deposition is not actually used at trial or as evidence on some successful preliminary motion, whether its cost is taxable is determined by determining whether the deposition reasonably seemed necessary at the time it was taken." *See* 10 Wright, Miller, & Kane, *Federal Practice and Procedure*, § 2676 at 424.

*Lloyd v. Del-Jen, Inc.*, No. 4:06CV01546 (GTE), 2007 WL 3408274 at 3 (E.D. Ark. Nov. 15, 2007). Here, the case did not go to trial, but the parties relied upon the deposition transcripts in support of and in response to cross motions for summary judgment. Those transcripts were necessarily obtained for use in the case. Unimin is awarded $2,225.60 for those depositions. *See Jackson v. UPS*, No. 4:07CV00276 (GTE), 2008 WL 783344 at 2 (E.D. Ark. March 25, 2008).

The plaintiffs argue that Unimin failed to document the requested costs, but that argument is mistaken. Unimin provided copies of the court reporting services' invoices for the costs of those depositions. Document #112-2 at 21-23.

## CONCLUSION

For the foregoing reasons, Unimin's motion is GRANTED in part and DENIED in part. Document #112. The request for an award of attorney's fees is denied. Costs are awarded in the total amount of $2,225.60.

IT IS SO ORDERED this 5th day of December, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE